# KATE FLAHERTY v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, November 27, 1907.

1. **EVIDENCE: Physical Facts: Position After Falling.** The way a person would fall from a street car and the position she would occupy when prone upon the ground, while the wheel was on her foot, would depend too much upon the play of instantaneous and convulsive muscular energy to be predetermined or determined at all according to any known rule.

2. **EXCESSIVE VERDICT: $7,500.** Plaintiff, a. young woman, thirty-three years old, working as a family domestic at five dollars per week, was injured by the wheel of a street car running upon and mashing her foot; blood-poisoning set in, which made amputation impossible for two months; parts of the foot, both flesh and bone, sloughed away, and the evidence shows that no skill can perform an amputation and adjust a mechanical appliance in such a way as to avoid a halting step; all the foot except the heel was amputated, and the leg is two inches short. *Held*, that a verdict of $7,500 was. not excessive.

3. **NEGLIGENCE: Instruction: Stopping Car.** Where the issue in the case is whether the car had stopped at the time plaintiff attempted to enter, that issue is put to the jury by the general instruction intended to cover the whole case which requires the jury to find as a fact that "defendant's servants in charge of said car received the plaintiff as a passenger on .said car." If they found that to be so, then, by necessary implication, they rejected defendant's theory that she was forced under the moving car by a rushing crowd, or that she negligently strove to enter a moving car about to stop.

4. ———: ———: ———: **Made Pointed by Others.** And where the other instructions given unmistakably point out that in order for plaintiff to recover the car must have stopped to receive passengers before she attempted to mount the running-board, the instruction is not misleading or so lacking in definiteness as to justify a reversal.

5. ———: ———: **Assumed Perilous Position.** Where plaintiff's testimony placed her with one foot on the footboard and the other on the body of the car, and as she was thus balanced and poised, the car was suddenly started with a shock, an instruction which predicated her right to recover on the truth of these facts is not erroneous as assuming that she was at that time in a position of danger, for it it a misapprehension to say her testimony put her in a position of safety on the car.

Flaherty v. St. Louis Transit Co.

6.  ———: ———: **Refusal.** The refusal of a proper instruction whose vital elements are embodied in others given, is not error.

7.  ———: ———: **Nurses' Services: Sister's Services: No Objection.** Plaintiff was first taken to a general hospital and nursed for a few days, and then to her sister's house, which was not her home, and nursed by her sister day and night for three or four months more. No contract was shown to exist between her and her sister for such services. She was permitted to show these facts and the value of nursing generally, without confining it to the particular hospital, without objection; and her instruction on the measure of damages told the jury to compensate her "for any expenses necessarily incurred for medicines, medical or surgical attention or nursing which the jury may believe from the evidence plaintiff has incurred," etc. *Held*, that in this condition of the evidence, plaintiff was clearly entitled to an instruction including expenses for nursing, and if defendant wished to confine her recovery to the nursing at the hospital, it should have asked an instruction so limiting it. The instruction was mere non-direction, not misdirection, and defendant having stood mute, and there being evidence to sustain the instruction given, which is good as far as it goes, there was no reversible error, whether or not the jury might properly have been instructed not to consider the services of the sister.

8.  ———: ———: **Medical Services in Same: Definitely Proved.** And the fact that said instruction included expenses for medical services and medicines, for which the evidence fixed a definite liability, and did not limit the amount of her recovery on those items, was not error, the petition asking for no specific amount under any one head or item of damages, and the instruction praying for a general verdict covering them all. If defendant desired a more specific instruction, it should have asked it.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

Affirmed.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1)  The court erred in giving plaintiff's first instruction, because the instruction assumes that plain-

tiff was in a position of danger at the time the car is alleged to have been set in motion, when, under the pleadings and proof, that was a disputed and a contested fact.    Instructions should not assume controverted facts.  Maxwell v. Railroad, 85 Mo. 105; Koenig v. Railroad, 173 Mo. 722; Siegrist v. Arnot, 10 Mo. App. 206. (2)   The first instruction is also erroneous because, in authorizing a verdict for plaintiff, it fails to require the jury to find that the car had stopped to receive her as a passenger and was standing still at the time she got aboard same, and, contrary to the petition, authorized a verdict for plaintiff merely upon a finding that there were jerks or shocks in the motion of the car as it rounded the curve.  Instructions purporting to cover the whole case should not ignore important issues raised by the pleadings and evidence.  Sawyer v. Railroad, 37 Mo. 241; Sullivan v. Railroad, 88 Mo. 182; Thomas v. Babb, 45 Mo. 386.  (3)   Plaintiff's twelfth instruction is erroneous because it authorizes a recovery for any expenses incurred by plaintiff for nursing, while the evidence shows that no such liability was incurred by plaintiff.  Gibney v. Railroad, 103 S. W. 48.  (4) The court erred in refusing defendant's requested instruction 17.  (5)   The verdict is the result of passion and prejudice and against the overwhelming preponderance of the evidence.  Spohn v. Railroad, 87 Mo. 74; Gibney v. Railroad, 103 S. W. 48; Spiro v. Railroad, 102 Mo. App. 263.  (6)   Plaintiff's twelfth instruction is erroneous because it does not limit the amount which plaintiff was entitled to recover on account of expenses incurred for medicines, medical and surgical attention and nursing, as all of these expenditures were definitely fixed in her evidence.  Smoot v. Kansas City, 194 Mo. 522.

*A. R. Taylor* and *Albert E. Hausman* for respondent.

(1) Instructions which are good as far as they go, but do not cover the entire case, amount in civil cases only to non-direction and not to error, and it is the duty of the other party to ask proper instructions to supply the shortcomings of those asked by his adversary. Bank v. Ragsdale, 171 Mo. 186; Drey v. Doyle, 99 Mo. 465; Cornwell v. Railroad, 106 Mo. App. 135, 174 Mo. 444; Railroad v. Randolph T. Company, 103 Mo. 468; Montgomery v. Railroad, 181 Mo. 477; Hall v. Hall, 107 Mo. 101; Wheeler v. Bowles, 163 Mo. 398; 11 Ency. Pl. and Pr., pp. 217 to 224 and note; 2 Thompson on Trials, pp. 1693, 1697. (2) Plaintiff's instruction 1 does not assume that plaintiff was in a position of danger at the time the car was set in motion, but submits that fact to the jury to be found from the evidence. (3) Plaintiff's instruction 12 correctly authorized a recovery for expenses incurred by plaintiff for nursing, for the evidence shows that she was nursed for five days at St. John's Hospital, by a Miss Agnes Kennedy, and that she was nursed at her sister's home for four months by her sister, of whose family she was not a member. The mere fact that plaintiff was nursed by her sister would not raise a presumption that the sister was performing those services without expectation of compensation unless it were further found that plaintiff and her sister lived together in a family relation, as members of the same household. Callahan v. Riggin, 43 Mo. App. 137; Moore v. Renick, 95 Mo. App. 208; Lillard v. Wilson, 178 Mo. 157. The Gibney case, cited for appellant, was where daughters living with the mother nursed her. (4) Plaintiff's 12th instruction is not erroneous for plaintiff was not required to state the amount recoverable under each head of damage unless her petition set forth the amount asked under each head of damage. The petition in this case does not set out

the amount asked under each head, but asks a general verdict. Wheeler v. Bowles, 163 Mo. 398; Browning v. Railroad, 124 Mo. 55; Mirrielees v. Railroad, 163 Mo. 483; Gorman v. Railroad, 113 Mo. 408.

LAMM, J.—Plaintiff had judgment, *nisi*, for $7,-500, in an action for negligence. From that judgment, the defendant appeals here.

The petition charges and the proof shows that defendant, on the 12th day of June, 1904, was a corporation operating a railroad and the cars running thereon to Creve Coeur Lake in St. Louis county. It is further charged, as follows:

That "whilst defendant's inbound car was stopped at said place to receive passengers therein, the plaintiff was by defendant's servants in charge of said car received as a passenger thereon, and whilst she was on the run-board or step of said car, and whilst she was stepping from said run-board or step of said car, up and into said car, to a seat on said car or a place to ride in security on said car as a passenger, and before she had a reasonable time or opportunity to reach a seat or place to ride in security on said car, defendant's servants in charge of said car negligently caused and suffered said car to start and move forward and to sustain a severe shock, whereby plaintiff was thrown from her said position on said car to the ground, and her left foot was thereby thrown under the wheels of said car and so badly mangled as to require amputation of all the foot except the heel. Plaintiff was thereby otherwise injured both externally and internally.

"That by her injuries so sustained plaintiff has suffered and will suffer great pain of body and mind; has been and will be permanently disabled from labor, and has lost and will lose the earnings of her labor, and has incurred and will incur large expenses for medi-

cines and for medical and surgical attention and nurs-
ing; and has been permanently maimed and rendered
a cripple for life, to her damage in the sum of twenty-
five thousand dollars, for which sum she prays judg-
ment.''

The answer was a general denial, and, further,
"that plaintiff's alleged injuries were caused by her
own negligence directly contributing thereto, in at-
tempting to board a moving car, before same had come
to a stop for the purpose of receiving passengers.''

The uncontradicted testimony tends to show that
defendant's railroad runs from the city of St. Louis to
Creve Coeur Lake, some distance in the country, *via*
Delmar Garden; that there was an aggregation of so-
called fetching allurements there, besides a possible
pleasing prospect of land and water, to-wit, a scenic
railroad or "switch-back," popcorn and peanut stands,
*etc.;* that at the entrance of said switch-back defend-
ant's track makes a loop which outgoing cars pass
around, and, when turned towards the town, become in-
coming cars. As we grasp it, the place for receiving
and discharging passengers is at a platform after the
cars have passed around this loop. There is evidence
indicating this was a Sunday evening and so many as
two or three thousand people were at Creve Coeur Lake
for an outing. Plaintiff, an unmaried woman, in good
health, was a domestic in the service of Mrs. Shannon
at a weekly wage of $5. Late in the afternoon, at
about 4 p. m., a Mrs. From, Mrs. Shannon and Miss
Flaherty boarded one of defendant's cars and rode to
Creve Coeur Lake. They remained there until about 9
p. m. The evening was fine and the *locus in quo* well
lighted. So, too, there is no dispute as to the character
of the injuries received by plaintiff. In that regard,
the record shows she proved the allegations of her pe-
tition. She was permanently injured; her left leg, the
injured one, is two inches shorter than the other, and

her foot was amputated at the heel—the lower extremity of the tibia and fibula and calcaneum (heel bone) being sawed off. Her doctor's bill is $500. She was bed-ridden for several months, and is confessedly bound for expenses for medicines. Having remained for a few days at St. John's Hospital, she was taken to the home of a married sister, and there nursed day and night while helplessly bed-ridden. At St. John's she was attended by one of the nurses employed there. There is no testimony she was nursed at her sister's home by anyone, save her sister, or members of her sister's family. There is no testimony she had been a member of that family; to the contrary, she was thirty-three years old and living out at service earning her own living. In connection with her nursing, she offered to prove and did prove (without objection from defendant) that reasonable pay for a nurse rendering similar day and night service was $5 per day. But plaintiff tendered no proof of an express contract of pay. So, too, it was shown by all the testimony that these three ladies undertook to board one of defendant's return cars to go home. The car was an open summer car with a canvas roof, known as a moonlight car. It was about forty-seven feet long, its seats ran crosswise and would accommodate, say, ninety-six passengers. Along one side of it there was a "run-board" or "running board," about 19 inches above the rail. This run-board from end to end was the step used to enter and leave the car on its open side, and from this run-board there was a rise of a few inches to the main floor of the car.

So far, there is accord; but as to the incidents of the injury and the cause of it, the evidence is in irreconcilable conflict. Thus, on plaintiff's part there was evidence tending to show that the car reached the place designated by defendant for passengers to get on and off; that it stopped; that at the time plaintiff undertook to board the car it was standing still, and there

were few, if any, passengers on the car; that there was
no crowd about the car and no particular rush, it being
practically empty at the time; that the three ladies
were together and awaiting a car; that Mrs. From got
on first and took a seat about the middle of the car;
that Mrs. Shannon then followed her and seated herself
in the same seat; that thereupon Miss Flaherty fol-
lowed to get into the same seat; that she got hold of an
upright in the car and got on the run-board; that with
one foot on the run-board and one on the floor of the
car she was raising herself to get into the car to take
a seat, and when in that ticklish fix, poised on balance,
so to speak, the signal bell rang and the car suddenly
started forward a distance of from two to six feet and
threw her violently backward and caused her left foot
to get on the rail, and either the forward or back
wheels of the hindmost truck caught her foot, thereat
the car again stopped, this time with the wheel resting
on her foot smashed and pinned fast to the rail. Plain-
tiff introduced evidence tending to show, further, that
there were three cars in a row, all standing still; that
the car in question was the middle one; that the for-
ward car was moved ahead; and that the middle car
then hitched up, following the forward one.

Defendant's evidence was strongly contrary to the
foregoing. For instance, it introduced testimony tend-
ing to show there was a rush to board the car before it
stopped and as the car came round the loop; that the
conductor and motorman were crying out to the people
to stand back, to keep away and not get hurt or killed,
and could not control the crowd; that there was a crowd
congregated there, eager to return to town; that the
car came around the loop slowly, the motorman feeding
his power gently by moving up a notch, now and then;
that he did not stop the car at all until it reached the
platform; and that when he stopped to allow passen-
gers to enter the car, one of the rear wheels was found

to be on plaintiff's foot; that when notified of that fact, he backed the car off her foot; that the movement off her foot was the only movement the car made after it stopped; and that there was no signal bell to go on after the car stopped for passengers. Neither defendant's motorman or conductor saw plaintiff or her friends getting on the car, or anything of the accident until a halloo was raised that the car was on a lady's foot.

One of defendant's witnesses, however, did testify that the car, before smashing plaintiff's foot, stopped a little while, a short ways off, and then started forward. To offset this, he further said that at the time the car stopped the first time plaintiff and her companions were not close enough to it to get on. At least, the witness was at the spot and trying to keep the crowd back, and then went forward. We do not understand that he saw plaintiff at the time she was trying to board the car. No other eye-witness introduced by defendant testified to seeing plaintiff trying to board the car. The broad and open inference from defendant's testimony is that plaintiff was either pushed by the crowd on the rail while the car was moving, or, that in undertaking to unnecessarily and negligently mount a moving car, she met with her mishap.

However, there seems to be little, if any, contradiction as to the fact that when plaintiff fell she fell backwards, straight out from the car. It seems the run-board projects quite a distance beyond the rail and the wheels; and defendant's learned counsel argue that the position in which she fell and her awkward explanation of how she fell into that position are "physical facts" destroying the theory that she was thrown in that way with her foot on the rail by the movement of the car. It is allowable to say, possibly, that the way a person would fall and the position she would occupy when prone upon the ground would depend too much

upon the play of instantaneous and convulsive mus-
cular energy to be predetermined, or determined at all,
according to any known rule. It might be a physical
fact that a person would fall and lie in a given way under
der given circumstances; and it might also be a physi-
cal fact that the same person falling under the same
circumstances would lie or roll in an entirely different
way. If the crowd rushed upon plaintiff and pushed
her foot under the wheels, or if in a rush she carelessly
got on a moving car, it is not any more apparent why
she could fall backwards than that she should be thrown
backwards out of a car by a forward jerk.

The court (among others) gave the following in-
structions:

1. "If the jury find from the evidence in this case,
that the defendant on the 12th day of June, 1904, was
operating the car mentioned in the evidence as injuring
the plaintiff as a carrier of passengers for hire; and if
the jury find from the evidence that on the evening of
said day at or near Creve Coeur Lake at the place men-
tioned in the evidence, defendant's servants in charge
of said car received the plaintiff as a passenger on said
car; and if the jury find from the evidence that whilst
the plaintiff was on said car and the running-board
thereof, and before she had a reasonable time or oppor-
tunity to reach a seat on said car, or a place of safety
on said car, defendant's servants in charge of said car
negligently caused or suffered said car to start and
move forward and sustain a shock and that thereby
plaintiff was thrown from said car, and run upon, and
her foot crushed and injured by the wheel of said car;
and if the jury find from the evidence that plaintiff
was exercising ordinary care at the time of her injury,
she is entitled to recover."

2. "The court instructs the jury that if they find
from the evidence in this case that defendant was on

the 12th day of June, 1904, operating the car mentioned in the evidence as injuring the plaintiff, for the purpose of carrying passengers for hire; and if the jury find from the evidence that on the evening of said day, at or near Creve Coeur Lake defendant's servants in charge of said car stopped said car, at the platform mentioned in the evidence and that said place was one of the points where defendant usually received passengers on said car; then the court declares the law to be, that defendant's servants in charge of said car were in duty bound to keep said car stopped until all passengers intending to become passengers on said car had a reasonable time and opportunity to do so—and before starting said car (if they did so start said car) to use ordinary care to see that no passenger was in danger from a movement of said car.''

3. "Plaintiff alleges as her cause of action in this case that on the 12th day of June, 1904, at Creve Coeur Lake, in St. Louis county, Missouri, while defendant's car was stopped at said place to receive passengers thereon, the plaintiff was by defendant's servants in charge of said car received as a passenger thereon, and that while plaintiff was on the running-board or step of said car, and while she was stepping from said running-board or step of said car up and onto said car to a seat in said car or to a place to ride in security on said car, and before she had a reasonable opportunity to reach a seat or place to ride in security on said car, defendant's servants in charge of said car negligently caused and suffered said car to start and move forward and to sustain a severe shock, whereby plaintiff was thrown from her position on said car to the ground, and that thereby she received the injury of which she complains.

"The act of negligence complained of and alleged in the petition, is that when plaintiff was on the running-board or step of the car the servants of defendant

in charge of the car negligently caused or suffered said car to start and move forward and to sustain a shock, and that such negligence in causing or suffering said car to move forward and by such moving or suffering said car to move forward to cause a shock, threw plaintiff to the ground and caused the injury of which she complains.

"The burden is on plaintiff throughout the whole case to prove to the satisfaction of the jury by the greater weight of the evidence, that said alleged act of negligence caused the injury, if any, of which plaintiff complains, and unless the jury believes that plaintiff has proved by the greater weight of the evidence that defendant's said servants were negligent in the manner alleged as aforesaid, and that said alleged act of negligence caused the injury, if any, which plaintiff suffered, then the verdict must be for defendant."

4. "Defendant in its answer denies the negligence alleged as the cause of plaintiff's alleged injuries, and in addition thereto defendant alleges that said injuries, if any, were caused by plaintiff's own negligence directly contributing thereto in attempting to board a moving car before the same had come to a stop for the purpose of receiving passengers. While the burden is on defendant to prove the allegation of its answer to the purport that plaintiff was injured by her own negligence, yet that does not relieve the plaintiff from the burden of proving by the greater weight of the evidence that her injuries, if any, were caused by the negligence of defendant and its servants in the manner in which plaintiff charges it was done. In other words, plaintiff must prove to the satisfaction of the jury by the greater weight of the evidence that she received the injuries, if any, of which she complains, in the way she alleges she received them, and unless she has so done, then the verdict must be for defendant."

7. "Before the jury can find for the plaintiff in

this case they must believe from the greater weight of the evidence that plaintiff got onto the running-board or step of the car when it had stopped, and that while she was in that position the car was started forward and sustained a shock by which she was thrown from the car and received her injuries, and unless they so believe then she cannot recover in this case, although the jury may believe that defendant was negligent in some other way or manner.''

8. ''If the jury believe from the evidence that when the car on which it is alleged plaintiff received her injury was approaching the stopping place, there was a crowd of people trying to board the car before it stopped, and that plaintiff was in the crowd, and that the car was moving slowly and the conductor and others were warning the crowd to keep off or back from the car until it stopped, and that notwithstanding such warnings plaintiff attempted to board the car before it stopped, and that before it stopped she fell and her foot was caught under the car, and that she was not on the car and was not thrown off the car by any sudden shock of the car in starting forward after she had got onto the car, then the plaintiff is not entitled to recover in this case and the verdict must be for defendant.

9. ''Although the jury may believe that plaintiff had not boarded the car but was trying so to do and that the pressure of a crowd about and around her combined with her attempt to board the car, threw her down and that thereby her foot was caught under a wheel of the car and injured, and that she was not thrown from the car by its moving forward and said car sustaining a shock, then plaintiff cannot recover and the verdict must be for defendant.

10. ''If the jury believe from the evidence that neither plaintiff nor defendant was guilty of negligence, as defined in other instructions, but that the injuries,

if any, sustained by plaintiff were the result of an accident, then the jury should find for the defendant.

12. "If the jury find for plaintiff they should assess her damages at such sum as they may believe from the evidence will be a fair compensation to her—

"First, for any pain of body or mind which the jury may believe from the evidence she has suffered or will hereafter suffer by reason of her injuries and directly caused thereby.

"Second, for any loss of the earnings of her labor which the jury may believe from the evidence she has sustained or will hereafter sustain by reason of her injuries and directly caused thereby.

"Third, for any expenses necessarily incurred for medicines, medical or surgical attention or nursing which the jury may believe from the evidence the plaintiff has incurred by reason of her injuries and directly caused thereby."

Of the foregoing instructions defendant now complains of number 1 and number 12.

Defendant, among other instructions refused, asked number 17, reading as follows:

"While it was the duty of defendant as a carrier of passengers to exercise a high degree of care, in receiving and protecting plaintiff if she sought to enter defendant's car as a passenger, yet plaintiff ought on her part to exercise ordinary care when seeking to become a passenger, and if she entered or attempted to enter defendant's car while it was in motion she did so at her own peril, unless the jury further believe that defendant's servants in charge of the car by their conduct invited her to enter before the car stopped; and if the jury further believe that defendant's conductor, and others, if any, acting upon the request of defendant's servants publicly warned those seeking to become passengers to stay off the car until it stopped and that notwithstanding plaintiff entered or attempt-

ed to enter the car before it stopped, then plaintiff was not received as a passenger and was not exercising ordinary care on her part, and the verdict must be for defendant.''

On this record it is argued that the verdict is the result of passion and prejudice and against the overwhelming preponderance of the evidence. The further errors assigned relate to the giving and refusing of instructions. In that behalf, it is argued that:

(a) Instruction number 1 is erroneous because it assumes that plaintiff was in a position of danger at the time the car is alleged to have been set in motion, when that was a disputed fact on the foregoing record.

(b) That said instruction is further erroneous because it fails to require the jury to find that the car was standing still at the time she got aboard the same; and, contrary to the petition, it authorized a verdict for plaintiff merely upon a finding that there were jerks or shocks in the motion of the car as it rounded the curve and before it stopped to receive passengers at the platform.

(c) That the 12th instruction is erroneous in that it permitted a recovery for any expenses incurred by plaintiff for nursing—the evidence showing there was no such liability.

(d) That said instruction was further erroneous in not limiting the amount which plaintiff was entitled to recover on account of expenses incurred for medicines, medical and surgical attention and nursing—all these expenses being definitely fixed in her evidence.

(e) That there was error in refusing defendant's instruction number 17—the question whether plaintiff was received as a passenger being a material one (not submitted), and defendant's evidence showing she was not so received.

On such assignment is there reversible error in the case?

I.  The testimony shows that blood-poisoning set in presently after plaintiff's injury; that her resulting physical condition made an amputation impossible for over two months; that parts of her foot (both flesh and bone) sloughed away; and that with an amputation of the kind finally rendered necessary in her case, no hand however cunningly it wrought can so adjust a mechanical appliance as to avoid a halting walk.  That she suffered greatly in mind and body from her pains goes without saying.  In the presence of such facts, we are not willing to say that a judgment of $7,500 of itself indicates such passion or bias in the jury as would poison it.  Twelve very cool, dispassionate and just men (through no heat of passion or twist of prejudice and out of no flippancy in mere form or veneering of gallantry) put to it by their oaths and the facts, might well have rendered such a judgment as adequate compensation to a young woman handicapped throughout life, as Miss Flaherty is shown to be; for true it is the race is not always to the strong and the swift, and yet a happy mind at ease in a sound body is of the essence of good.  Bunyan held this in mind when he made his immortal hero loosen and lose the burden weighing him down in his journey to the Celestial City and the Delectable Mountains; and, peradventure, Diogenes hinted at it when he waived Alexander's princely offers to one side and asked him (and Bucephalus, too, maybe) to get out of his sunlight.  The point is ruled against defendant.

II.  Plaintiff's testimony, as said, tended to show the car had stopped at the proper place to receive passengers; that there was an implied invitation to enter the car as a passenger; that she, in the usual way and in the exercise of proper care, was mounting the car; and that while so mounting it, with one foot on the runboard and the other on the floor, there was a sudden car movement forward and she was cast off, thrown down

and injured. Defendant's testimony, to the contrary, as said, tended to show one of two things—either that Miss Flaherty was forced against and under the car by a crowd vulgarly pushing and struggling to get on, without regard to the safety or personal rights of ladies present, or else that she negligently undertook to mount a moving car that had nearly reached its stopping place, and was injured by her own inadvertence; and that, in either event, defendant acquitted itself of fault by timely protests and careful conduct.

In this condition of the proof it must be held that plaintiff was entitled to an instruction on her theory, and defendant to instructions on its theory of the case. It is argued by learned counsel that, with the proof as it was, the question of whether the car had stopped to receive passengers was vitally material and that the proof looked both ways on that question. Therefore, they say, an instruction ought not to fail to put it to the jury, in some form, to find that the car had stopped when Miss Flaherty sought to enter. So far we agree with them. They say, moreover, that instruction numbered 1 did so fail to put that material and controverted fact to the jury to find; but we cannot agree this is so.

On the one hand, an instruction ought not to be read as if it stood solitary and alone, independent of every other instruction. On the other hand, a general instruction, covering the whole case, ought not to ignore essential elements of the case made. Applying these rules to instruction numbered 1, it will be seen it is a general instruction. It puts certain facts to the jury and tells them if they find the facts that way, then plaintiff is entitled to recover. It will be seen, also, that one of the facts put to the jury to find is that "defendant's servants in charge of said car *received the plaintiff as a passenger on said car.*" If they found that to be so, then, by necessary implication, they rejected de-

fendant's theory that she was forced under the car by
a rushing crowd, or that she negligently strove to enter
a moving car about to stop at the platform for the in-
gress and egress of passengers.  The instruction, in
effect, requires the jury to find that the plaintiff was
invited to enter the car, had accepted the invitation,
and was in the act of entering the car.  Now, if the jury
found this to be so, then Miss Flaherty was a passen-
ger and entitled to a passenger's care; for defendant
had received her as a passenger in the eye of the law.
[Devoy v. Railroad, 192 Mo. l. c. 210, *et seq.*, and cases
and authorities cited.]

Moreover, by its terms, the instruction required
the jury to find she was on the run-board, had not had
a reasonable time or opportunity to reach a seat, and
that defendant's servants threw her to the ground and
injured her by a negligent act, to-wit, by causing or suf-
fering the car *to move forward* and to sustain a shock.
It is argued that the instruction is so worded as to ap-
ply precisely as well to the fact that the car had *not*
stopped at all when plaintiff tried to enter; that the
forward movement referred to might be an accelerated
motion given to the then moving car, and not to a for-
ward movement following a standstill; that the state
of the whole proof pro and con was of such a character
as to make this a delicate, but turning, point in the
case; and, therefore, the instruction should have been
guardedly rounded out with such precision as to con-
fine plaintiff to her own theory as outlined in her peti-
tion, to-wit, that the car had actually come to a stop
at the proper place when plaintiff undertook to enter.

It may be conceded the instruction is in the shadow
of a little vagueness, taken by itself and eyed critically.
But in ordinary speech if A says B "moved forward,"
there is a fair implication, at least, that A means that
B was in a condition of repose when the movement be-

gan. If A was bent on expressing the idea that B was going at the time, but then and there began to hasten his pace, he would naturally have inserted some word to convey the accelerated motion. The absence of such modifying word, here, is not without significance. If, now, it be remembered that the instruction required the jury to find that plaintiff had been received as a passenger; and if, with that fact in mind, the other instructions are looked to, we think it sufficiently appears that the jury could not have been misled. The fair intendment of the whole body of the law delivered to the jury confined plaintiff to the case made in her pleading. Thus: By instruction 2 the jury were required to find that the car had stopped at one of the points defendant usually received passengers. Instruction 3 outlines the elements in plaintiff's cause of action, and one of these elements was that the car had stopped when she entered. Instruction 4 outlined the elements in defendant's answer. One of these elements was that the car had not stopped for the purpose of receiving passengers; and the instruction tells the jury that plaintiff must establish by the greater weight of the evidence that she received the injuries of which she complains "in the way she alleges she received them, and unless she has done so, then the verdict must be for the defendant." Instruction 7 told the jury that before they found for plaintiff they must find she got on the run-board when the car has stopped, and that her injury must be found to be the result of a subsequent forward movement of the car. Instruction 8 put defendant's defense to the jury as outlined in the answer; and they were told that if plaintiff was in a crowd of people who were trying to board a car before it stopped, that the car was moving slowly and the conductor and others were warning the crowd to keep back until it stopped, and notwithstanding such warning plaintiff attempted to board the car before it stopped, etc., and fell and was injured, then

she could not recover. Instruction 9 told the jury that if the pressure of the crowd, combined with her attempt to board the car, threw her under the wheels, and that she was not thrown there by a forward movement of the car, then she could not recover. Instruction 10 told them that if it was a mere accident, without fault on either side, she could not recover.

With these instructions submitted in a series, consecutively, as one charge by the court, it cannot well be seen how the jury were misled as defendant fears. The point in hand is also ruled against defendant.

III. In this connection it is argued by defendant's counsel that instruction numbered 1 is erroneous in assuming that plaintiff was in a position of danger at the time the car is alleged to have been set in motion, when that was a contested fact under the proof. It is pointed out that the petition does not allege that the act of starting forward was unusual or different from the ordinary manner of starting cars with passengers aboard; that it is not alleged the jerk or shock was unusual; that the precise and fair legal intendment of the allegations in the petition is that any starting of the car when plaintiff was in the position she says she was, to-wit, balanced and poised, with one foot on the runboard and one in the body of the car, would be a negligent act; that the duty violated was the duty to keep the car still while plaintiff was getting on, and until she had reasonable opportunity to seat herself. It is conceded by counsel that if the plaintiff was in the very act of passing from the foot-board into the body of the car, then "any starting of the car under her theory was negligence;" but it is argued that if she was on the car, then the mere starting of the same without any unusual motion or jerk would not be negligent. Based on the theory that plaintiff introduced testimony tending to show that she was on the body of the car at the time she was thrown off, it is contended that the in-

structions erroneously assumed that she was in a place of danger. But we do not think there is any substance in this contention. It is a misapprehension to say that plaintiff's testimony put her in a place of safety on the car. That testimony placed her in a situation of passing from the run-board to the body of the car and in a place where any sudden start of the car would unbalance her and did, especially if accompanied by a movement so sudden and pronounced as to be said to cause the car to "sustain a shock," as set forth in the instruction criticised. This point is also ruled against defendant.

IV. Instruction numbered 17, refused to defendant, was a proper declaration of law; and had the elements of that instruction not been given, in substance, to the jury in others, it would have been palpable error to refuse it. But, as we read it, its vital elements had been given to the jury in other instructions, and the assignment of error predicated of its refusal is disallowed.

V. Instruction 12, on the measure of damages, is criticised from two sides. It is argued that under the proof there is no liability resting on plaintiff to pay any nurse hire. In fine, that she was a member of her sister's family, and that (without an express contract) there is no contract implied to pay for care and attention. It is assailed on another side, to-wit, that the evidence definitely fixed the liability for medicines, medical and surgical attention and nurse hire. Therefore, it is argued, the instruction should not have been general, but should have limited the amount of her recovery on these items. Of these in their order.

(a) It is overlooked in the first assault on this instruction that there was evidence that plaintiff remained a few days in St. John's Hospital and there was attended by a nurse, a stranger to her. There can be no

question but the law raises an implied contract to pay
for services under such circumstances.   True it is that
the great body of her nursing was in her sister's home.
She was allowed to prove that nursing by her sister
without objection.   She was allowed to prove (without
objection) the value of nursing generally, without con-
fining it at St. John's.   In this condition of her proof,
plaintiff was clearly entitled to an instruction including
expenses for nursing; and if defendant desired to have
the nursing limited to St. John's Hospital, it should
have asked an instruction so limiting the recovery.
The instruction, as it was, was well enough.   The com-
plaint made is in effect a complaint of mere non-di-
rection; not misdirection.   Therefore, it is without sub-
stance.   Defendant may not stand by mute and ask no
instructions on a given point, if there is evidence to
sustain the instruction given, and if it is good as far
as it goes.   Shortcomings of that character do not con-
stitute reversible error. [Browning v. Railroad, *infra.*]

It is contended by plaintiff's learned counsel that
under certain conditions the law raises an implied
promise to pay for services rendered by one relative
to another, and that these conditions are met with in
this case.   Counsel put their finger on a line of cases,
telling under what circumstances the usual rule of
"something for nothing" in the case of the care of
one relative by another does not obtain, *viz.*: Callahan
v. Riggins, 43 Mo. App. l. c. 137; Moore v. Renick,
95 Mo. App. l. c. 208; Lillard v. Wilson, 178 Mo. l. c.
157.   But it is not necessary in the disposition of this
case to enter that inviting field of exploration — the
point being determined before that field is reached.

(b)   Finally, it is insisted that instruction 12 is
erroneous "because it does not limit the amount which
plaintiff was entitled to recover on account of expenses
incurred for medicines, medical and surgical attention
and nursing, as all of these expenditures were definitely

fixed in her evidence." We are cited to Smoot v. Kansas City, 194 Mo. l. c. 522, as sustaining this assignment of error. The reasoning of the Smoot case must be read in the light of the facts in that case. There the instruction allowed the jury to find that doctors' and surgeons' hire for the plaintiff did not exceed an amount of $350—this in the face of a petition limiting the amount to $200. In that case, also, the petition "claims the sum of $250 for loss of time from his means of livelihood;" whereas the instruction quite took the bridle off of that item and told the jury that "if you further find and believe from the evidence that plaintiff had, on account of said injury, if any, been compelled to lose time from his means of livelihood, you may also take that fact into consideration, and allow him therefor such an amount as, under the evidence, would reasonably compensate him for said loss of time, if any, *etc.*" It appears, therefore, in the Smoot case that a general instruction was not only given where the petition was specific on one item, but that in another item the petition alleged one amount and the instruction submitted another. The case does not sustain defendant's point. Here the petition asks no specific amount under any one head or item of damage. The elements of the damage are set forth with particularity and a general verdict is prayed covering them all. The instruction put the matter to the jury precisely as the petition did, and was not bad. If the defendant desired a more specific instruction, it should have asked it. [Browning v. Railroad, 124 Mo. l. c. 71, *et seq.*] The instruction questioned follows an approved precedent. [Mirrielees v. Railroad, 163 Mo. l. c. 483.]

There being no reversible error, the judgment must be affirmed. It is so ordered. All concur.